THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL ANDRADES GONZÁLEZ, Defendant and Appellant.

No. 17000. Decided November 17, 1961.

*Angel Viera Martínez* for appellant. *J. B. Fernández Badillo, Attorney General of Puerto Rico,* and *Rodolfo Cruz Contreras, Assistant Attorney General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo and Mr. Justice Dávila.

PER CURIAM.

This is a larceny case. The defendant admits the facts, but alleges that he was intoxicated and that that relieves him from responsibility. At the time of the events the aggrieved party was single and lived alone in an apartment in Río Piedras. This is his account of what happened. On November 16, 1957, about 7:00 p.m., he went out to visit his mother. He returned about 10 o'clock and stopped to talk with some friends at a drugstore across the building where he lived. From there he went to a nearby bar. It must have been about 1:00 a. m. of the 17th day. He stayed there for some time and was approached by a person by the name of Juan Antonio Rodríguez Velázquez, known as Chiquitín. They talked about horse racing, since the latter was working in a stable of the race track. He stayed there until 5:00 a.m. At that hour he went to a *cafetín* in the old market place of Río Piedras in the company of Chiquitín. Shortly afterwards the defendant, Rafael Andrades González, approached them and they invited him to have some beer. The latter sat down and they talked about horse racing. Andrades told them that his uncle was a jockey. Next they talked about music and defendant Andrades said that he loved music. The aggrieved party then invited Chiquitín and the defendant to his apartment. It was already 6:30 a.m. The aggrieved party took with him a dozen bottles of cold beer to continue drinking. They listened to music. After taking a couple of cold beers, Chiquitín fell asleep around seven thirty o'clock. The aggrieved party and the defendant continued drinking. The aggrieved party then took the defendant to his room to show him some sport shirts for the purpose of presenting them to him, if they fitted him. The defendant accepted them and they put them on the ironing board. At nine o'clock they woke up Chiquitín, who left for his work. Around 10:00 a.m., after

consuming all the beer, the aggrieved party lay on his bed with his clothes on and fell asleep. He did not wake up until the afternoon. The defendant was no longer there. He went out in the afternoon. When he got up in the morning of the following day he noticed that a pistol was missing. Then he realized that a watch and a lighter were also missing.

The aggrieved party reported the occurrence to the police. The matter was investigated and the detective in charge knew a brother of the defendant and informed him about the investigation. The brother then took the defendant to police headquarters. The defendant admitted there that he had the pistol, but that he had given it to a friend to put it away. They went to the house of the friend. On the way he handed the watch to the detective. They seized the pistol. Several days later the defendant went to return the lighter. When they called the aggrieved party to the headquarters to identify the objects, he did not seem to know the defendant. They had to inform him that that was the person with whom he had been on the day of the events.

Informations were filed for grand larceny, carrying of weapons, and possession of a weapon without a license. At the trial the grand larceny case was changed to and prosecuted as petit larceny. The trial for larceny and carrying of weapons was held before a jury, the other by the court without a jury.

The aggrieved party testified in support of the information. His testimony establishes the facts stated above as respects his knowledge of them. From his testimony it appears that the defendant, while in his company, had at least seven beers between 5:00 a.m. and 10:00 a.m. The other facts were established by the testimony of the investigating detective and by the person to whom the defendant gave the pistol to put it away. This witness testified that the defendant had asked him to put it away until he was able to locate

the owner, for he did not know to whom it belonged because he could not recall how it came into his possession.

The evidence for the defense consisted of the testimony of a friend of the defendant who picked him up from the sidewalk on Sunday morning and took him to his home in Carolina; the testimony of a brother who described the state of unconsciousness of the defendant that Sunday when he arrived at his house as a result of intoxication; and the testimony of a chemist, who testified on the number of drinks needed for a person to become unconscious, which was the state of the defendant as described by the witnesses for the defense. In answer to a question by the district attorney as to whether a person who drinks seven beers between 5:00 a.m. and 10:00 a.m. becomes so intoxicated as to render him unconscious, he answered in the negative.

The appellant assigns 17 errors in support of reversal of the judgment sentencing him to serve one year in jail in the petit larceny case, from one to two years' imprisonment in the penitentiary for carrying weapons, and six months in jail for possessing weapons without a license, the latter penalty to be served concurrently with that in the larceny case.

He discusses jointly the first three errors. In stating his theory of the case at the outset of the prosecution, the district attorney said "that both the defendant and his relatives went to the house of the aggrieved party after the occurrence of the events, and while he was there certain relatives of the defendant said to the aggrieved party, "Sorry, the old woman is ill..." That in addition to telling him that his mother was ill, they told him that this young man (referring to the defendant) felt sorry, that he had been drunk, but that afterwards he felt sorry. . ."

The appellant contends that it was error to permit the district attorney to make the transcribed statements, to permit him in the course of the aggrieved party's testimony to repeat those statements in the presence of the jury, and also

to permit the district attorney to harp on the petition for clemency allegedly made by the defendant's relatives; and that it also erred in permitting the district attorney to say that the defendant should have alleged his innocence when his relatives made the statements transcribed above, and in failing to charge the jury specifically to disregard them. He contends that the statement made by the district attorney to the effect that the defendant should have objected when his relatives talked with the aggrieved party, amounts to a comment on his silence.

Assuming that the occurrence of the facts in the manner described by the appellant is error, the fact is that the judge ordered that the statements made by the aggrieved party sought to be challenged be stricken out. At p. 52 of the Tr. of Ev. it is said:

"... It is ordered that they be stricken out, and I instruct you, ladies and gentlemen of the jury, in consonance with the petition by the defense, that you should disregard entirely the statements made by the witness relating to the conversation between the defendant's brothers and the witness on the date mentioned by him."

And at p. 53 it is said:

"It having been decided that you should disregard entirely the statements or the testimony of the witness relating to that conversation between the brothers in the presence of the defendant and of him, I instruct you that there is no evidence to support the district attorney's statements in the sense that the defendant was bound to deny, to talk, to reject any imputation regarding some act. You should therefore reject any inference which may be drawn from the district attorney's statements."

██ Yet, it is worth noting that the fact that the district attorney was unable to prove what he announced in his argument is not error in the absence of bad faith. *People v. Rivera, ante,* p. 452. And that the district attorney's remarks on the attitude of the defendant in not protesting when his relatives talked with the aggrieved party, does not

amount to commenting his silence. *People* v. *Millán*, 35 P.R.R. 817 (1926).

■ We turn to consider the error assigned by the appellant to the effect that Roldán, witness for the prosecution, was not permitted, upon being examined by the defense, to recount everything the defendant said to him when he handed him the pistol. Roldán testified that when the defendant handed him the pistol to put it away, he told him that he was looking for the owner in order to return it to him. Thereupon the defense attempted to question him with respect to other statements made by the defendant on that occasion, specifically, as to his condition after consuming liquor. The judge did not allow it in the belief that those statements were self-serving. We believe that they were, but even then the fact is that the judge's action did not prejudice the defendant because he presented other evidence to the effect that he was so unconscious when he left the house of the aggrieved party that he was picked up from a sidewalk by a friend.

■ The next error is to the effect that it admitted the detective's testimony to whom the defendant admitted having taken the articles from the aggrieved party's house, despite the fact that the defendant gave a written statement which was afterwards presented in evidence by the district attorney. *People* v. *Saltari*, 53 P.R.R. 850 (1938), decides this question against the appellant.

■ We turn to consider another error assigned. When the district attorney presented the detective mentioned in the preceding paragraph for the purpose of establishing that the defendant admitted the facts imputed, and when he was about to present the sworn statement also referred to, the judge ordered the jury to retire in order to make the prior determination of voluntariness required in *People* v. *Declet*, 65 P.R.R. 22 (1945), and *People* v. *Fournier*, 77 P.R.R. 208 (1954). Upon their return, the judge instructed the jury as required by the authorities, but he stated that "the court,

as a preliminary matter of law, believes that there are elements of voluntariness to warrant admission of his statement." He also said: "Ladies and gentlemen of the jury, the district attorney now attempts at this moment, will attempt to establish certain facts in connection with those on which the court has made a preliminary determination that there are sufficient elements of voluntariness in order that those facts which will be submitted to the jury be, as a matter of fact, submitted to you for consideration." And in another place: "The ladies and gentlemen of the jury will recall that some time in the course of this prosecution it was said that the court had made a determination of voluntariness in connection with the defendant's alleged confession or admission. . ." And on another occasion: "You will recall, ladies and gentlemen of the jury, that I said then that the purpose of that preliminary determination was none other than to justify the action of the court, or to justify the court in submitting to you for consideration those pieces of evidence."

The appellant maintains that those instructions conflict with the holding in *Declet* and *Fournier*, since the judge stated that in his opinion the statements which the defendant made to the detective and included in the sworn statement were voluntary, and that, therefore, it necessarily influenced the determination of the jury on this point.

In the first place, in *Declet* and *Fournier* it is said that the best practice is to withdraw the jury for the purpose of making the initial determination on the question of voluntariness, which is incumbent upon the presiding judge. But it need not necessarily be made. However, we repeat here that the jury should be always withdrawn. The initial determination may nonetheless be made in the presence of the jury, although, we repeat, it is not the best practice, and then submit it for final determination. Of course, the judge was bound to make a preliminary determination that there was evidence to show that the statement was voluntary. If this

were not so, the confession would not go to the jury. As a matter of fact, in all cases in which it goes to the jury in the second stage it is because the judge has made a preliminary determination that there is evidence to establish that the admission or confession was voluntary. In order to avoid confusion, the jury should always retire at the first stage and there is no need for informing in the instructions that the judge has made a preliminary determination that there is evidence to show that the confession is voluntary.

Yet, the fact is that the judge charged the jury as follows:

"... You will recall, ladies and gentlemen of the jury, that I said then that the purpose of that preliminary determination was none other than to justify the action of the court, or to justify the court in submitting to you for consideration those pieces of evidence, but that you, ladies and gentlemen of the jury, were the ones who would finally determine from the entire evidence presented here whether those statements of the defendant, both the written and the verbal given in Carolina, as has been stated here in the evidence, were given by him freely, spontaneously, and voluntarily, and that the fact that the court made a preliminary determination of elements of voluntariness in order that that evidence may go to you for consideration, may in nowise weigh on your conscience. I then said, and I repeat now, that the ladies and gentlemen of the jury are neither committed nor bound in any way by that preliminary determination to decide whether these statements, which the evidence sought to establish, were or not voluntarily given or offered by the defendant. Voluntarily, ladies and gentlemen, that is what the word also says. Spontaneously, as the word itself implies. That they were made spontaneously without any threat, physical violence, psychological coercion, correction of any kind which could have tortured the defendant's mind; in other words, ladies and gentlemen, the complete absence of some element which might have prompted this man against his will to make that statement, I repeat, in Carolina as well as, I repeat, in the district attorney's office in San Juan. Voluntarily, ladies and gentlemen of the jury, also discards the possibility that both or any of those statements could have been made by the defendant upon promise of benefit, leniency, protection; promises, ladies and

gentlemen of the jury, which could have induced this man to say deep in his conscience: 'It is better for me to tell these things, even though I do not wish to tell them, because I have been promised that it will be beneficial to me if I divulge these facts.' Therefore, it is your function, ladies and gentlemen of the jury, to decide whether these statements of the defendant, both of them, that given verbally in Carolina as well as that given in the district attorney's office before Agraít Oliveras, which the evidence has sought to establish, are the consequence of a determined will in that sense, without any element of pressure, threat, duress, coercion, or promise which could have prompted this man, the defendant, to make them; or, on the contrary, whether those statements, if you find that he made them, were the product of his free will. I want to say to you that the responsibility of the district attorney continues to be, and has been throughout this proceeding, and shall continue to be before your conscience, to convince you—the law makes it his duty—to convince you that those statements were voluntarily given before you, ladies and gentlemen of the jury, might admit them as element of proof against him."

Thus, the judge made it clear to the jury that it was their duty to make the final determination of voluntariness. It is worth noting that the defendant did not offer evidence to show that neither his admission to the detective nor his confession before the district attorney was voluntary.

In *People* v. *Medina*, 72 P.R.R. 241 (1951), cited by the appellant, the judge stated that "the court decides that the testimony was voluntary and that the jury shall examine it at the proper time." No evidence was presented afterwards on the voluntariness before the jury as required in *Declet*. The error was obvious, as well as the inapplicability of the case to the facts herein.

■ We shall discuss the sixteenth error which bears on the error which we have just considered. The appellant complains that the court instructed the jury to the effect that, "on the contrary, if you find that they were not voluntarily given, you are then at liberty to disregard them entirely and not to use them as evidence against the defendant."

The appellant maintains that it is not that the jury is at liberty to disregard the confession, but that it is under the duty to do so. Obviously, the judge should have been more specific on all occasions when treating this question in his instructions. It is the jury's duty to reject the confession if they find that it is not voluntary, and that is what the judge did when charging the jury that it was the duty of the district attorney "to convince you that those statements were voluntarily given *before you, ladies and gentlemen of the jury, might admit them as element of proof against him.*" (Italics ours.)

■ Thus taken as a whole, they are in conformity with the law. However, special care should always be exercised in order that all the instructions to the jury be clear, specific, and simple. They are thus better understood.

The next error assigned by the appellant is that it is error not to admit the statements which the defendant made to his relatives when it was discovered that he had a pistol in his possession. What that evidence purported to prove had already been established by the evidence of the prosecutor. It is well to recall that Roldán, witness for the prosecution, testified that when the defendant handed him the pistol he said that he could not recall to whom it belonged and that he was looking for the owner in order to return it to him. This is consistent with his theory that he was so intoxicated that he did not realize what he was doing. The jury therefore had that evidence under consideration and from a witness for the prosecution.

■ When the defendant's brother was on the witness stand and referred to the defendant's state of intoxication, the district attorney asked him if there were other substances which produce the same effect, apart from alcohol. The appellant objected to these questions and the judge sustained the objection. He alleges that the question insinuated that the defendant used drugs and that it prejudiced him before the

jury. But the fact is that the judge immediately sustained the objection. We said recently in *People* v. *Rivera, ante,* p. 452, that we could not presume that the jury was so susceptible as to be in any way affected and not be able to return a fair and impartial verdict. We repeat it here.

The ninth error is to the effect that the court stated that in its opinion a chemist could not determine the amount of alcohol to be imbibed by a person to render him unconscious. The chemist testified on this point following the motion for reconsideration made by the appellant, but the defendant maintains that the judge's first statement prejudiced him. Obviously, this is not correct.

■ In the tenth error the appellant maintains that the trial court erred in emphasizing and saying, "let me take that," and in continuing to question the chemist on cross-examination by the district attorney, while he was testifying on the effect that seven beers imbibed in the course of four hours could have on a person. The judge's statement is a comment made aloud before listening to the chemist's testimony. After making that statement, he puts some clarifying questions to the witness. The defendant contends that the comment and the questions which followed affected him adversely. Appellant is not right. The judge's intervention was the usual intervention and it did not clearly prejudice the defendant. *People* v. *Cordero,* 82 P.R.R. 367 (1961).

The instructions challenged by the appellant in the eleventh assignment refer to the consideration which the jury is bound to give to the possession of stolen objects.[1] They are in conformity with law.

---

[1] "Very seldom is the jury called upon to determine the effect of the evidence on the mere recent possession of stolen articles. By the very nature of the case, the possession is generally surrounded by other corroborative circumstances or which account for the presumption. If the party has hidden the property, if he denies that he is in possession thereof and the falsity of his denial is afterwards discovered; if he is unable to account for the manner in which it came into his possession; if he should make false, unbelievable, or inconsistent statements as to the manner in which

 The appellant complains that in his instructions to the jury on exculpatory statement the judge said that "the phrase itself suggests the meaning of 'exculpatory,' a statement whereby the declarant seeks to deny his guilt, to shirk all responsibility." He contends that the jury would have to infer from this instruction that no credence should be placed on an exculpatory statement. There is nothing to warrant this inference. In *People* v. *Millán*, 66 P.R.R. 233 (1946), we said:

"... His statement is nothing else than what is known as an 'exculpatory statement,' through which a person tries to protect himself by declaring that he had no participation in the criminal occurrence under investigation."

The judge further stated:

"If from the attendant circumstances the jury believes that they deserve credit (the exculpatory statements) and that you should give it and believe them, alright. However, if from such circumstances you believe that you should not give credit to those statements whereby the defendant denies guilt, it is your right to reject them and not give them credit at all."

 The appellant maintains that the instructions on intoxication in connection with the larceny case are erroneous. They are not. They are consonant with the holding in

---

he acquired it, as, for example, that he found it or that it was sold to him, or that it was given or sold to him by a stranger, or that he left it in his house; if he has got rid or attempted to get rid of it at an unreasonable low price; and if he has hidden himself or attempted to evade the action of justice; if other stolen articles or tools used to commit robbery, or any other instruments of crime are found in his possession; if he has been seen around the place at the hour or moment the act was committed; or if some article belonging to him is found in or near the place more or less at the same hour the robbery was committed; if his shoe prints or other wearing apparel should correspond to the marks or prints left by the thiefs; if he has attempted to wipe out any mark or print of identity of the stolen articles, or attempted to corrupt or bribe the parties or officers of justice, these and any other similar circumstance may be fairly deemed as shedding light and accounting for the fact of the possession, and point morally to the conclusion that such possession may only be attributed to a criminal origin and can not otherwise be accounted for."

*People* v. *Rivera,* 70 P.R.R. 541 (1949), and *People* v. *Rosado,* 78 P.R.R. 416, 420 (1955). And although they are not at all as clear and specific as they ought to be, they comply substantially with the requirements of law and the authorities governing these cases. This also disposes of the fifteenth error.

In the fourteenth error the appellant points out that the trial judge erred in not instructing the jury that intoxication, as established by the defense, relieved from responsibility in the case for carrying weapons, and in charging the jury that "the law is violated by the mere carrying of weapons regardless of the purpose, motive, or intent."

 Such is the offense for carrying weapons. See *People* v. *Rivera,* 75 P.R.R. 405 (1953). *Cf. People* v. *Bou,* 64 P.R.R. 445 (1945), a case involving adulteration of milk, where the defendant who transported the milk did not have the key to the lock of the container. There were only two keys, one for the owner of the dairy and another for the owner of the milk stand. On the way a health inspector stopped him. He explained the situation to him and they went to the milk stand in order to open up the lock. The milk was adulterated. He was prosecuted and found guilty and, on appeal, we affirmed since the law does not require intent as in the case of carrying of weapons.

In order that the last error pending discussion may prosper, the appellant himself admits that we would have to overrule *People* v. *Fonseca,* 79 P.R.R. 34 (1956), and prays that we do so, but we are not convinced by his arguments.

None of the errors assigned having been committed, the sentences appealed from will be affirmed.